# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DANIELLE COX,                         )
                                      )
                    Plaintiff,        )
vs.                                   )        NO. CIV-12-0183-HE
                                      )
COUNCIL FOR DEVELOPMENTAL             )
DISABILITIES, INC.,                   )
                                      )
                    Defendants.       )

## ORDER

Pending before the court are defendant's motion for new trial, or alternatively, motion for judgment as a matter of law [Doc. #90], plaintiff's motion for attorneys fees [Doc. #85], and plaintiff's motion for pre- and post-judgment interest [Doc. #88]. For the most part, the motion for new trial reasserts arguments previously ruled on by the court. The court is unpersuaded that its earlier rulings were in error or that other grounds exist to set aside either the court's orders or the jury's verdict. Further, the court concludes that there was sufficient evidence upon which a reasonable jury could have arrived at a verdict in plaintiff's favor. That motion will therefore be overruled.

Plaintiff's motion for attorneys fees and motion for pre- and post-judgment interest are also fully briefed by the parties and at issue.[1]

### Background

In this case, plaintiff Cox asserted claims for gender-based hostile work environment

---

[1]*Given the nature of the objections raised and the relatively detailed briefing by the parties, the court concludes a hearing is not necessary to resolve these motions.*

and retaliation against her former employer. The court entered summary judgment for the defendant as to the hostile work environment claim and the retaliation claim was resolved at trial. After a two day trial, the jury returned a verdict in favor of the plaintiff for $1,984 in back pay, $500 for emotional distress, and punitive damages of $500, for a total judgment of $2,984.[2] Plaintiff now requests attorneys fees in the amount of $145,148.50.[3]

## Discussion

Defendant does not dispute that plaintiff is the prevailing party as to at least certain claims in this Title VII case. As a result, the court is authorized to award reasonable attorneys fees to plaintiff. *See*, 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . ."). Although the statutory language vests discretion in the court, the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Lefemine v. Wideman, 133 S.Ct. 9, 11 (2012) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Once the court determines that an award of fees is proper, it must then determine what constitutes a reasonable fee. Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1230 (10th Cir. 2001).

---

[2]*The judgment entered by the court [Doc. #84] erroneously stated the amount of the compensatory damages recovered as $2494 rather than $2484. An amended judgment will be separately entered.*

[3]*Plaintiff originally requested $1,150 for expert witness costs related to the retention of Dr. James F. Horrell as an economic expert. However, plaintiff has withdrawn that request from both her motion for attorney's fees [Doc. #98 at 1 n.2] and motion for costs [Doc. #97 at 3 n.1] in light of the fact that an expert was not used at trial.*

Defendant argues the fee sought is so outrageous that the court should exercise its discretion to deny a fee altogether. While there is appellate authority supporting that result in some circumstances, the court concludes the circumstances here do not warrant such a result. Plaintiff's request is, to be sure, somewhat divorced from reality. However, it is not so indefensible as to warrant barring a fee recovery altogether.

In determining what constitutes a reasonable fee, the court begins by calculating the so-called "lodestar" fee. The lodestar calculation is the product of the number of hours "reasonably expended" and a "reasonable hourly rate." Hensley, 461 U.S. at 433. Once that amount has been determined, the court then adjusts the amount up or down based on a variety of factors, including the reasonableness of the fees in light of the results obtained. Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1103 (10th Cir. 2005), *overruled on other grounds as recognized in* Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 n. 2 (10th Cir. 2006).

Here, defendant does not challenge the hourly rates claimed by the attorneys for plaintiff (Leonard, $250; Haupt, $225; Johnston,$175) and they appear to be within the range of prevailing rates in this district for lawyers of comparable skill and experience. It does object to certain law clerk and/or legal assistant time on the basis that, viewing them as paralegals, the hourly rate sought ($95) is too high. It suggests $75 per hour is reasonable. The court concludes that an evidentiary hearing to fully ventilate the issue is not warranted,[4]

---

[4]*The fees incurred in litigating the question would substantially exceed the amounts in issue.*

3

that $85 per hour is consistent with prevailing rates for persons of comparable skill and experience, and that the impact of this difference on the present fee calculation (total of 58.8 hours x $10 per hour) is $588. With this adjustment, the court proceeds on the basis that the requested hourly rates are reasonable.

The bigger question is the extent of the hours "reasonably expended" in this case. Defendant objects to the hours claimed on multiple grounds, including that some were involved with the hostile work environment claim upon which plaintiff did not prevail, that there was unreasonable duplication by attorneys, too much time in interoffice conferences, and the like. It also objects to the "block billing" employed by plaintiff as to certain time entries.

It is true that plaintiff did not prevail as to the hostile work environment claim. However, that claim was "related to" the claim upon which she did prevail and there is no apparent way to identify or segregate time spent only on the HWE claim rather than the retaliation claim. In these circumstances, the court concludes the requested hours should not be significantly reduced by reason of the differing outcomes on the two claims. *See* <u>Hensley</u>, 461 U.S. at 440.

Other aspects of the time spent are more problematic. This was a heavily lawyered case. Virtually all of the tasks undertaken by plaintiff's counsel involved the substantive involvement of at least two attorneys.[5] Although participation by multiple counsel is

---

[5]*Defendant does not dispute that plaintiff's counsel actually spent the time claimed in their records, but challenges only whether the time spent was reasonable.*

unremarkable, counsel who justify the hourly rates involved here should be experienced enough that substantial review and revision by other attorneys is unnecessary, at least to the extent it appears to have occurred here. Similarly, charging for having multiple counsel review the same routine filing or order of the court is difficult to justify. Further, as defendant notes, there was a very substantial amount of time spent in interoffice conferences between counsel.[6] When they are billed even at the smallest available time increment, the sending and reviewing of a single email between counsel, no matter how short or insignificant the email, costs (in the circumstances here) at least $40. With the substantial number of such emails/conferences here, the result is substantial.

Some reduction for the presence of a second lawyer at trial is warranted, as the second lawyer did not examine or cross-examine witnesses, argue jury instruction questions, or otherwise participate in the proceedings in any obvious way. Plaintiff's submissions indicate the second counsel was prepared to do so had particular witnesses been called by defendant and the court appreciates that co-counsel perform useful functions at trial and otherwise, even if not in a lead role. However, some adjustment for role by the second counsel is warranted.

Also significant from the standpoint of duplication of effort was counsel's handling of plaintiff's summary judgment response. It appears that lead counsel and a second attorney handled virtually all the pretrial proceedings, including discovery, with substantial time spent

---

[6]*The court does not share defendant's concern that counsel charged even for text messages. Whether the conferring is done by text message, email, or in person, the real question is whether the extent of the conferences and the charges therefore are reasonable.*

by both in those tasks, but that a third lawyer handled the preparation of the summary judgment response.  This required the third counsel to spend 30 or more hours familiarizing herself with discovery in the case, to achieve a level of familiarity with the case which her co-counsel presumably already had.  The cost of such duplication should not be shifted to the opposing party.[7]

While the duplicative time spent in connection with the summary judgment response is quantifiable from the submitted time records, most of the time attributable to the concerns discussed above is not.  That stems in considerable part from plaintiff's use of block billing.  While the court does not view block billing (i.e. listing a single time amount for multiple tasks undertaken on a single day) as sufficiently problematic to exclude the time altogether, at least for that reason alone, it does hinder meaningful evaluation of the time spent and determination of how much adjustment for particular factors, such as unreasonable duplication, is warranted.[8]  In any event, the court concludes an appropriate adjustment must be made and that the adjustment must necessarily be, at least in part, a " judgment call" rather than a more specific mathematical exercise.

The exercise of "billing judgment" is, of course, a necessary component of a fee

_____

[7]*The same third counsel also billed for approximately 10 hours of unspecified assistance with trial strategy.*

[8]*For example, the court suspects, but cannot determine with certainty, that the cost of the time spent on the motion for fees exceeded the amount plaintiff recovered in the case.  Work on multiple post-judgment motions is included in the same block.*

statement or fee application.[9]  The application should reflect that counsel has made a good faith effort to exclude hours which are "excessive, redundant, or otherwise unnecessary." Ellis v. Univ. of Kansas Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998).  Here, counsel has made some effort to do so,[10] but not in a way that substantially addresses the concerns noted above.

The court concludes that a downward adjustment of thirty percent is necessary to reflect the excess time spent in connection with the concerns noted above.[11]  After giving effect to this reduction, the lodestar amount is $101,603.95.

As noted above, determination of the lodestar amount does not end the inquiry.  That amount may be adjusted upward or downward based on various factors.   The one most pertinent here — and which substantially affects the ultimate determination of a reasonable fee — is the results obtained.[12]  What was the degree of success obtained by counsel's efforts?

Plaintiff's recovery in this case was not a "nominal"recovery, but it was pretty close. The total recovery by plaintiff was less than $3000, an amount substantially less than what

[9]Obviously, the present fee statement was not prepared with the expectation that counsel's own client would or might pay it.  The usual incentive for the diligent exercise of billing judgment — the expectation that the bill must be justified to a paying client — is therefore not present here.

[10]The application reflects some adjustment for attendance at depositions by second counsel. It also excludes time spent by TKD, who is described as a first year associate attorney, but who appears to have performed mostly tasks which were administrative, rather than legal, in nature and which would ordinarily have been performed by non-lawyer staff.

[11]This percentage adjustment is intended to include the $588 adjustment based on hourly rates.

[12]Hensley indicates this is the most critical factor which might warrant adjustment of the lodestar.  461 U.S. at 436.

plaintiff sought. That amount included $500 in punitive damages, which suggests the jury thought defendant's conduct was bad, but not bad enough to warrant much more than a nominal penalty. In any event, it is clear that plaintiff's recovery here was far less than what she sought and less than what any observer would be likely to view as a significant victory at trial. The court recognizes that cases sometimes require more in time and expense than the monetary value of what is recovered, that a defendant's litigating posture impacts, sometimes hugely, the costs of pursuit, and that important public policy concerns are involved where the vindication of employee workplace rights is concerned. Nonetheless, those concerns are insufficient here to avoid the necessity of a significant downward adjustment in the lodestar fee based on the degree of success obtained. The court concludes a further two-thirds downward adjustment is necessary based on the results obtained, which still results in a fee award (of $33,868) which exceeds the amount recovered by a factor of approximately eleven.

Plaintiff also seeks $464.85 for expenses associated with computer-assisted legal research.[13] The court concludes that this amount is reasonable and will be included in the final amount of recoverable attorneys fees.

Plaintiff filed an additional motion for pre- and post-judgment interest. Plaintiff initially asserted that the requisite pre-judgment interest rate was 6%. However, following

---

[13]*Plaintiff alternatively sought this amount in her motion for costs [Doc. #87]. The court concludes that this amount is more properly addressed in the context of the motion for attorney's fees. See* Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1180 n.10 (10th Cir. 2005) ("Courts have repeatedly clarified that computer research is not a separately taxable cost but 'a substitute for an attorney's time that is compensable under an application for attorneys' fees.'" (citations omitted)).*

the defendant's response, and, apparently, some belated legal research, plaintiff now agrees that the applicable pre-judgment interest rate is .09%. By the court's calculation, and without accounting for accrual per pay period as otherwise required, *see* Reed v. Mineta, 438 F.3d 1063, 1066-67 (10th Cir. 2006), the pre-judgment interest on plaintiff's back pay award of $1,984 amounts to $1.79.[14]

As the parties correctly note, the question of whether to award pre-judgment interest is within the court's discretion. In deciding the question, "[t]he district court must first determine whether the award of prejudgment interest will serve to compensate the injured party. Second, even if the award of prejudgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of prejudgment interest." Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1286 (10th Cir. 2002) (citations and internal quotation marks omitted). Under the circumstances existing here, including amounts at issue which perform no meaningful compensatory function, the court concludes that pre-judgment interest is not warranted and will not be awarded.[15] Plaintiff's motion will also be denied as to the determination of post-judgment interest, as that amount is provided by law and requires no input from the court at this point, particularly in

---

[14]*Should any party be inclined to argue that the rate for either 2011 (0.13%) or 2012 (0.05%) should have been used, the court points out that the monetary difference is negligible and not worth the further expenditure of time by either the parties or the court.*

[15]*Plaintiff incorrectly asserts that the court has already exercised its discretion to allow prejudgment interest [Doc. #99 at 1]. The judgment stated the amount of plaintiff's recovery "together with accruing interest thereon." [Doc. #84]. "Accruing" interest is not the same thing as "prejudgment" interest.*

light of the absence of objection or other argument from the defendant.

The time spent on post-judgment motions (as to both interest and attorneys fees), bears further comment from the standpoint of the fees sought for dealing with them. While attorneys fees may be recovered for such motions in a proper case, this isn't such a case. The minuscule amounts of interest at issue—the amount sought by the current motion would barely purchase a 16oz soda—make plaintiff's motion essentially useless for any purpose other than increasing attorneys fees. The time spent on the attorneys fee motion has itself generated a fee request which appears to exceed the amount of plaintiff's substantive recovery. And the time was spent in pursuit of an overall fee request which was substantially unreasonable. These factors, coupled with plaintiff's use of block billing which prevents a more calibrated adjustment, leave the court disposed to exclude from the fee recovery all amounts attributable to time spent on the motion for interest together with amounts for other purposes, such as the attorneys fee motion, shown in the same "blocks." The court computes the amount of this adjustment to be $5,332.50.

## Conclusion

For the reasons stated, defendant's motion for new trial [Doc. #90] is **DENIED**. Plaintiff's motion for pre- and post-judgment interest [Doc. #88] is **DENIED**. Plaintiff's motion for attorneys fees [Doc. #85] is **GRANTED** and plaintiff is awarded her reasonable attorneys fees in the amount of $29,000.35.

**IT IS SO ORDERED**.

Dated this 8th day of May, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE